# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DELISA SMITH, ) | |
| ) | |
| Plaintiff. ) | |
| ) | |
| vs. ) | Case No. 06 C 2844 |
| ) | |
| JO ANNE B. BARNHART, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiff Delisa Smith, who claims to be disabled due to a combination of severe back and pain, anemia, and obesity, filed this lawsuit seeking review of the decision of the Social Security Administration ("SSA") to deny her application for disability insurance benefits and for supplemental security income. Both the Commissioner of Social Security and Smith have moved for summary judgment. For the reasons stated below, the Court denies the Commissioner's motion, grants Smith's motion in part, vacates the ruling of the Administrative Law Judge ("ALJ"), and remands for further proceedings.

### Facts

Delisa Smith applied for disability insurance benefits and supplemental security income in 2004, alleging that she had become disabled on September 8, 2003 after suffering back and knee injuries while driving her employer's van. The SSA denied Smith's application and her subsequent request for reconsideration.

Prior to September 2003, Smith worked as a full-time delivery person for a mail services

company. Her job required her to pick up mail from various sites using a company car and to lift tubs of mail weighing as much as seventy pounds. Smith claims she was forced to quit her job because of serious back and knee injuries she sustained in a work-related accident on September 8, 2003. On the day of her accident, Smith sought treatment at the hospital and was released, but she returned to the hospital on September 13, by ambulance, due to continuing pain. On September 19, her physician released her to return to work with the following restrictions: no lifting; no prolonged standing and/or walking longer than ten minutes per hour; no bending; and no driving. R. 138. Her physician also instructed her to sit ninety percent of the time while at work. *Id*. On December 31, 2003 Smith's physician issued her a disability certificate finding her "totally incapacitated" until she recovered. R. 139. In addition to the back and knee impairments Smith sustained in the accident, she also suffers from obesity and anemia. R. 16.

In the years following her accident, Smith has seen a number of physicians. An MRI of her left knee taken on October 24, 2003 revealed a possible intra-articular loose body, subchondral degenerative change, and possible patellofemoral arthritis. R. 157. In April 2004, Smith began seeing Dr. Deidra Greathouse due to back pain. In June 2004, Dr. Greathouse performed x-rays of Smith's spine and a neurological examination. R. 230. Dr. Greathouse noted that Smith was "very vague about the effect of [her medications]," and was "unsure as to whether or not [Smith] was malingering." *Id*. Dr. Greathouse did indicate, however, that she would fill out Smith's disability forms if Smith provided them. *Id*. Dr. Greathouse saw Smith again in September 2004 and noted that Smith said that physical therapy was going "wonderful" and that her pain had improved. R. 176.

In November 2004, Dr. Peter Biale performed a consultative evaluation of Smith. Dr. Biale diagnosed Smith with lower back pain and noted that she displayed limited range of

motion of her lumbar spine. R. 184. Dr. Biale also found that Smith displayed limited motion in her left knee, walked with a limp, and was under treatment for anemia. R. 185.

A June 2005 CT scan of Smith's lumbrosacral spine revealed no evidence of disc herniation, and a June 2005 MRI examination of Smith's left knee revealed mild patellofemoral osteoarthritis and/or chondromalacia patella. R. 200, 203.

Dr. Daniel Newman, an orthopedic and sports injuries practitioner, evaluated Smith on June 29, 2005 and observed that she appeared to be in severe pain but found no significant objective findings in the examination to explain her symptoms. R. 214. He added that an MRI of Smith's knee showed "mild degenerative changes, but nothing else." *Id*. Dr. Newman also observed that Smith walked with a cane in her right hand and walked with a "very guarded gait." R. 213.

An MRI examination of Smith's lumbar spine on July 15, 2005 revealed a mild two-to-three millimeter posterior disc bulge elevating the posterior longitudinal ligament and indenting the ventral surface of the thecal sac, without significant spinal stenosis. R. 199. Mild generalized left neuroforaminal narrowing was also found. *Id*. An August 2005 MRI of Smith's lumbar spine showed no evidence of disc herniations or protrusions. Dr. Eduardo Nijensohn reported that it was an unremarkable MRI. R. 219.

Smith consulted with Dr. Newman again on August 24, 2005. He noted that Smith stated she felt pain almost continuously in her low back and experienced the strongest pain in her left knee when she descended stairs. R. 211. He found degenerative changes in the patellofemoral joint and limitation of motion in her back. *Id*. Dr. Newman stated that a neurological examination revealed a "slight decrease in her left ankle reflex as compared to the right." R. 212. He also found that a straight leg raising test produced knee pain on the left side. *Id*. He

recommended an EMG of her left leg due to the absent ankle reflex. *Id*. Dr. Newman noted that the MRI reports of the knee and back did not show much of significance and expressed doubt that the bulging disc was causing her pain. *Id*.

On September 6, 2005, Smith attempted to undergo an EMG test at Our Lady of the Resurrection Medical Center but had to terminate the test after a relatively short time because she was experiencing significant pain. R. 201. After a September 26, 2005 MRI examination of Smith's thoracic spine, Dr. Alison Pryce found disc dehydration with loss of disc height within the upper and mid-thoracic spine. R. 198. No disc herniation or canal impingement was noticed. *Id*.

Smith was evaluated again by Dr. Newman again on October 26, 2005. Dr. Newman noted that although the EMG had not been completed, there were some abnormalities on Smith's left side. He found that Smith's ankle reflex on her left side was still significantly decreased, she still had a positive straight leg raising test on the left side, and her knee pain persisted. R. 209. He thought that she was "a candidate for an epidural injection in spite of the paucity of findings on the MRI." *Id*.

On November 10, 2005, Dr. Brian Ogan, an anesthesiologist with a sub-specialty in pain management, examined Smith. Dr. Ogan concluded that Smith's "stated pain complaint, as well as her mechanism of injury [are] consistent with her physical exam and MRI findings." R. 207. He noted that Smith had undergone conservative management of her pain over the previous two years with "minimal overall improvement." *Id*. Dr. Ogan suggested that Smith proceed with a series of lumbar epidural steroid injections. *Id*.

The ALJ held a hearing in Smith's case on December 9, 2005. The ALJ heard testimony from Smith and from Edward Pagella, a vocational expert ("VE"). During Pagella's testimony,

the ALJ posed a series of hypothetical questions. R. 62-66. The ALJ instructed Pagella to "only consider the facts of the hypothetical" and then described a hypothetical person with similar characteristics to Smith. R. 62. In the hypothetical, however, the ALJ made no mention of anemia or obesity.

On December 21, 2005, the ALJ issued a written decision in which he denied Smith's claim for benefits. R. 11-28. He found that Smith had the following severe impairments: left knee subchondral degenerative change; L5-S1 disc bulge; anemia; and obesity. R. 16. Still, the ALJ found that Smith did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in the Social Security regulations. *Id*. He also found that Smith retained the residual functional capacity ("RFC") to perform unskilled, sedentary occupations. R. 22. The ALJ stated that he did not find Smith's description of her pain and limitations entirely credible and that her complaint was undercut by the inconsistency of the objective medical evidence with her claims and the inconsistency of her testimony over time. R. 18. The SSA's Appeals Council denied Smith's request for review on March 24, 2006. R. 3-5.

On December 15, 2005, after the hearing but before the ALJ issued his decision, Smith underwent a second EMG, which she successfully completed. Pl. Ex. D. The attending physician found the EMG to be "compatible with chronic radiculopathy bilaterally present in left S1 and right L5 distribution." *Id*. at 3. Dr. Newman reviewed the results of the EMG and found the EMG to be positive. *Id*. at 2. Dr. Newman thought that Smith had a herniated disc and required surgery. *Id*.

In the present case, Smith contends that the ALJ erred in finding that Smith's back impairments do not meet the SSA's listed impairments; made an improper credibility

5

assessment; and erred by using an RFC assessment that did not incorporate all of the evidence and ignored the testimony of the VE with regard to all but one of his questions. Smith argues, in the alternative, that the case should be remanded so that the ALJ can consider new evidence, specifically the results of Smith's post-hearing EMG test.

**Discussion**

To be eligible for disability insurance benefits, Smith must be unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905 (1998). In determining whether Smith suffered from a disability, the ALJ conducted the standard five-step inquiry: (1) whether the claimant was engaged in any substantial gainful activity; (2) whether the claimant's impairment was severe; (3) whether the claimant's impairment met or equaled one of the impairments listed in the SSA regulations; (4) whether the claimant could perform her past work; and (5) whether the claimant's impairments prevented her from doing other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)-(iv). *Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004). If Smith's impairments do not meet or equal a listed impairment as specified in step three, but are severe enough that she is prevented from performing her past work, the burden shifts to the SSA to prove that the other work exists in significant numbers in the national economy that the claimant can do, given her RFC, age, education and work experience. 20 C.F.R. §§ 404.1560(c) and 416.960(c)). *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

Smith attacks several of the ALJ's findings. First, the ALJ found that Smith's back impairments did not meet or medically equal the SSA's listed impairments, concluding "although the claimant has a herniated nucleus pulposus, there is no evidence of compromise of

6

a nerve root of the spinal cord with evidence of nerve root compression." R. 17. Smith argues that this is incorrect and that the ALJ overlooked or disregarded several instances in which, she says, her medical records provided evidence of nerve root compression. Smith also contends that the ALJ incorrectly assessed her RFC. Specifically, she challenges the ALJ's finding that Smith was not entirely credible, as well as his reliance on the testimony of the VE, each of which appears to have been critical to the ALJ's determination of the RFC issue. The Court will elaborate on these arguments momentarily.

Were the Court to agree with one or more of Smith's arguments, the likelihood is that the Court would not reverse outright and order an award of benefits, but rather would remand the case to the SSA for further proceedings. As noted earlier, Smith's alternative argument is that the case should be remanded for consideration of new evidence. The Court therefore deals with the latter point first.

A court may remand a case to the SSA for consideration of new evidence if the evidence is material and there is good cause for the claimant's failure to incorporate the evidence into the record at a prior proceeding. 42 U.S.C. §405(g), sentence six. "For sentence six purposes, 'materiality' means that there is a 'reasonable probability' that the Commissioner would have reached a different conclusion had the evidence been considered, and 'new' means evidence not in existence or available to the claimant at the time of the administrative proceeding." *Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997).

The results of Smith's EMG clearly did not exist at the time of the hearing. She was unable to complete an EMG test in September 2005 due to back pain, as noted in her medical records, but she successfully completed the procedure on December 15, 2005, six days after her hearing before the ALJ. Thus, Smith has shown good cause for her failure to incorporate the

7

results of the EMG testing into the record.

This EMG test result is also material for sentence six purposes. The attending physician found the EMG to be "compatible with chronic radiculopathy bilaterally present in left S1 and right L5 distribution." Pl. Ex. D at 3. After reviewing the results of the EMG, Dr. Newman found the EMG to be positive and also noted that his examinations have "repeatedly shown a decreased ankle reflex on the left side." *Id*. at 2. He added that Smith had not responded well to conservative treatment and suggested that she was a candidate for surgery. *Id*. The results of the EMG provide additional objective evidence to help assess whether Smith's impairments meet the listed impairments and to assess her credibility. As such, there is a reasonable probability that this evidence could have made a difference in the Commissioner's conclusion.

In short, the Court concludes that a remand for consideration of additional evidence is appropriate. Because the Court is remanding the case, it will address the other points raised by Smith to the extent they may affect the proceedings on remand.

As noted earlier, Smith challenges the ALJ's finding that there was no medical evidence showing nerve root compression. She contends that her medical records include several examples of such evidence: (1) the July 15, 2005 MRI, which showed not only her disc bulge but also indicated "mild generalized left neuroforaminal narrowing;" (2) consistent complaints of pain in the lower back and legs (*i.e.*, neuro-anatomic distribution of pain); (3) limited range of motion as observed by Drs. Greathouse, Biale, Newman, Torres, and Ogan; (4) loss of sensory reflex in her left ankle; and (5) positive straight-leg raising tests as observed by Drs. Biale, Newman, Torres, and Ogan.

The ALJ "need not provide a complete written evaluation of every piece of testimony and evidence." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005). However, "principles of

administrative law require the ALJ to rationally articulate the grounds for [his] decision. . . That is why the ALJ must build an accurate and logical bridge from the evidence to [his] conclusion," *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002). The ALJ must also "confront the evidence that does not support his conclusion and explain why it was rejected." *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). With regard to the nerve root compression issue, the ALJ offered no such explanation. He failed to elaborate on his conclusory statement that there was no evidence of a compromise of a nerve root and failed to explain why the medical evidence Smith offered did not equal a listed impairment, specifically, Listing 1.04.

As indicated, Smith also challenges the ALJ's assessment of her credibility, which was a material aspect of the ALJ's findings on the RFC issue. "An ALJ's credibility determination will not be disturbed unless it is "patently wrong." *Luna v. Shalala*, 22 F.3d 687, 690 (7th Cir. 1994). However, when the determination "rests on objective factors or fundamental implausibilities rather than subjective considerations, appellate courts have greater freedom to review the ALJ's decision." *Indoranto*, 374 F.3d at 474. Furthermore, an ALJ "cannot reject a claimant's testimony about limitations on her daily activity solely by stating that such testimony is unsupported by the medical evidence." *Id*.

Here, the ALJ appears to have done exactly what the Seventh Circuit has found inappropriate. Specifically, he appears to have ignored considerable objective medical evidence that was consistent with Smith's claims. In his decision, the ALJ did lay out the majority of Smith's medical history since her accident in 2003. Some of this evidence supported a finding that Smith's complaints were legitimate, and some of it did not. Based on this evidence, the ALJ concluded that "[t]he preponderance of medical opinion is that the claimant has limitation[s] arising from her musculoskeletal and left knee conditions, but not to the degree complained of

by the claimant." R. 21.

Though the ALJ made reference to the great majority of Smith's medical history, he never explained his rationale for crediting certain reports more than others. "Weighing conflicting evidence from medical experts is exactly what the ALJ is required to do," *Young*, 362 F.3d at 1001, but the ALJ gave no explanation for how he weighed the conflicting evidence. Furthermore, the ALJ gave short shrift to Smith's last medical evaluation before her hearing, in which Dr. Ogan found her pain complaints to be consistent with the medical evidence.

The ALJ also found that Smith's credibility was weakened by the inconsistency of her testimony over time. This finding was based primarily on Smith's September 27, 2004 statement to Dr. Greathouse that physical therapy was going "wonderful." However, in that same evaluation, Smith also informed Dr. Greathouse that she still experienced pain, but that it was improving. If there is one constant in Smith's voluminous medical records, it is the consistency of her complaints of pain regardless of the results of her medical testing. Smith's positive reaction to physical therapy in September 2004 did not necessarily undercut her pain complaints; it may have simply reflected the changing status of her pain or a desire to please the doctor.

As noted earlier, Smith also challenges the ALJ's consideration of the testimony of the VE. Among other things, Smith contends that the hypothetical questions the ALJ proposed to the VE were improper because they did not incorporate all the necessary elements. "Ordinarily, a hypothetical question to the vocational expert must include all limitations supported by medical evidence in the record." *Young*, 362 F.3d at 1003. The hypothetical, however, "need not include every physical limitation, provided that the vocational expert had the opportunity to learn of the applicant's limitations." *Id*. In this case, the VE was specifically prevented from

10

considering some of Smith's limitations. In describing the hypothetical claimant, the ALJ instructed the VE to "only consider the facts of the hypothetical." Record at 162. The ALJ then described a hypothetical person but made no mention of anemia or obesity, two conditions that the ALJ determined afflicted Smith. Thus, the VE was prohibited from considering all of Smith's physical limitations.

In his hypothetical questions, the ALJ asked the VE to consider two people with similar RFCs. The only difference between the two was that the first hypothetical person required an additional five-minute break in the morning and afternoon and the second hypothetical person did not. The VE found this difference important and concluded that the first hypothetical person could not perform any jobs in the regional or national economy but that the second could. In his decision, the ALJ gave no explanation for why he concluded that Smith met the criteria of the second hypothetical person but not the first. Without such an explanation, proper court review is difficult, or perhaps impossible.

## Conclusion

For the reasons stated above, the Court grants plaintiff's summary judgment motion in part and denies it in part [docket no. 21], and denies defendant's motion for summary judgment [docket no. 24]. The Clerk is directed to enter judgment remanding plaintiff's claim to the Social Security Administration for further proceedings consistent with this decision.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: June 25, 2007